UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MONTOBACCO LIMITED,

                                Plaintiff,

                                                                       Case No.

    -against-

MARLEY GREEN, LLC, LITTLE BAY, INC., MARLEY
NATURAL COMPANY and PRIVATEER HOLDINGS,
INC.,

                                Defendants.
-------------------------------------------------------------------x

## COMPLAINT

      Plaintiff MONTOBACCO LIMITED (hereinafter "Plaintiff' or "Montobacco"), by its attorneys, as and for its complaint against Defendants MARLEY GREEN, LLC, LITTLE BAY, INC., MARLEY NATURAL COMPANY and PRIVATEER HOLDINGS, INC. (hereinafter collectively referred to as "Defendants"), alleges as follows

### INTRODUCTION

      1.     This is a case for unfair competition under the Lanham Act and trademark infringement, dilution and unfair business practices under the New York General Business Law.

### THE PARTIES

      2.     Plaintiff Montobacco Limited, is a Montserrat corporation, with its principal place of business in Montserrat, BWI.

3. Upon information and belief, Defendant Marley Green, LLC is Delaware limited liability company formed on September 25, 2014 with its principal place of business in New York, NY

4. Upon information and belief, Defendant Little Bay, Inc., is a Nevada corporation formed on November 14, 2014 with its principal place of business in New York, NY.

5. Upon information and belief, on or about January 13, 2015, Defendant Little Bay became authorized to do business in the State of New York pursuant to the filing of an Application for Authority with New York State Department of State.

6. Upon information and belief, Defendant Marley Natural Company is a non-incorporated joint venture and/or partnership between the other Defendants.

7. Upon information and belief, Defendant Privateer Holdings is a Delaware corporation formed on November 6, 2011 with its principal place of business in Seattle, WA and with substantial business operations in New York, NY.

8. Upon information and belief, Defendants Marley Green, Little Bay, the Marley Natural Company, and Privateer Holdings are under common ownership and management and/or are alter egos of each other.

## JURISDICTION AND VENUE

9. Jurisdiction over this action arises under Section 39(a) of the Lanham Act, 15 U.S.C. 1121 and 28 U.S.C.§§ 1331(federal question jurisdiction), 1338(a) (trademark infringement) and 1337(b) (unfair competition) and 1367(a)(supplemental jurisdiction over state law claims).

10. Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. §§ 1331 and 1391.

## BACKGROUND FACTS

11. Plaintiff is in the business of the legal manufacture and sales of tobacco, to include sales of cannabis and cannabis related products within several jurisdictions in the United States in which such sales are permissible by law.

12. Defendant Marley Green, upon information and belief, has no business operations and was formed for the sole purpose of filing certain intent to use applications for registration and licensing of trademarks.

13. Defendant Little Bay is in the business of selling cannabis and cannabis-related products and operates three websites managed and operated in New York City -- www.marleynaturalshop.com. www.marleynaturaltheherb.com and www.marleynatural.com-- via which it sells such products.

14. Defendant Privateer describes itself as using "strategic investments in the cannabis industry to acquire and create mainstream brands."

15. Defendant Privateer is the registrant of the www.marleynaturalshop.com and www.marleynaturaltheherb.com domain names being utilized by Defendant Little Bay.

16. The www.marleynatural.com domain name is registered to an individual, Paul Maxwell, who upon information and belief, is a Vice President of Defendant Privateer.

17. Defendant Privateer has sought and received significant publicity for its business of investing in and creating brands for cannabis products.

18. Plaintiff is the owner of trademark registration for the mark "Natural Marley Spirit" (the "Natural Marley Spirit" Mark) granted by the country of Montserrat on January 20, 2014 and assigned registration number 4451(the "Natural Marley Spirit" Mark).

## PLAINTIFF'S TRADEMARK

19. Plaintiff commenced use of the trademark the "Natural Marley Spirit Mark" in US interstate commerce no later than August 27, 2014.

20. On or about December 23, 2014, Plaintiff filed an "intent to use" trademark application with the USPTO for the mark "Natural Marley Spirit" in connection with tobacco, cigars and cigarettes, tobacco, cigars and cigarettes, which application was issued serial number 86489485 by the USPTO (the "Plaintiff's Tobacco Application").

21. Plaintiff's Tobacco Application is public record and easily available to any party searching for trademark applications and registrations.

22. On or about November 18, 2015, Plaintiff filed an "intent to use" trademark application with the USPTO for the Natural Marley Spirit Mark in connection with blended spirits; distilled spirits; fruit wine; grape wine; natural sparkling wines; red wine; rum; sparkling wines; still wines; table wines; whiskey spirits; white wines; wine and wine coolers which application was issued serial number 86489485 by the USPTO (the "Plaintiff's Wine and Spirits Application").

23. Plaintiff's Wine and Spirits Application is public record and easily available to any party searching for trademark applications and registrations on the USPTO's website.

24. On or about July 30, 2015, Plaintiff filed with the USPTO an "intent to use" trademark application for the mark "Natural Marley Spirit Marijuana" in connection with herbal drinks used to aid in sleep and relaxation; herbal pills and mixes for the psychological benefit of cleansing one's karma; herbal supplements; herbal supplements for sleeping problems; herbal teas for medicinal purposes; herbal topical creams, gels, salves, sprays, powder, balms, liniment and ointments for the relief of aches and pain; liquid herbal supplements; medicinal herbal extracts for medical purposes; medicinal herbal preparations; natural herbal supplements which application was issued serial number 86710349 by the USPTO (the "Plaintiff's Herbal Application").

25. Plaintiff's Herbal Application is public record and easily available to any party searching for trademark applications and registrations.

26. Plaintiff's Tobacco Application has been suspended by the USPTO due to a Notice of Allowance granted by the USPTO to Defendant Marley Green.

DEFENDANTS' INTENT TO USE TRADEMARK APPLICATIONS

27. On or about November 21, 2014, Defendant Marley Green caused to be filed with the USPTO an "intent to use" trademark application for the mark "Marley Natural" (the "Mark") allegedly in connection with various tobacco products, which application was issued serial number 86462127 by the USPTO (the "Defendant's Tobacco Products Application").

28. On information and belief, on November 21, 2014 with it filed Defendant's Tobacco Products Application, Defendant Marley Green was aware of Plaintiff's applications related to its "Natural Marley Spirit" mark.

29. The Goods listed in the Defendant's Tobacco Products Application were "Smoking accessories, namely smokeless cigarette and cigar vaporizer pipes, electronic cigarette refill cartridges sold empty, tobacco grinders, tobacco smoking pipes, tobacco filters, tobacco pouches, and ashtrays."

30. In the Defendant's Tobacco Products Application, it was certified on behalf of Defendant Marley Green, that it had a bona fide intent to use the Mark in connection with the goods listed in the application.

31. On or about November 21, 2014, Defendant Marley Green also caused to be filed with the USPTO an "intent to use" trademark application for the Mark allegedly in connection with various food products, which application was issued serial number 86462125 (the "Defendant's Chocolate Products Application").

32. The Goods listed in the Defendant's Chocolate Products Application were "Chocolate bars; Confectioneries, namely, chocolate; Food flavorings; Sauces; Granola-based snack bars, all of the foregoing containing natural ingredients."

33. In the Defendant's Chocolate Products Application, it was certified on behalf of Defendant Marley Green, that it had a bona fide intent to use the Mark in connection with the goods listed in the application.

34. On or about November 21, 2014, Defendant Marley Green also caused to be filed with the USPTO an "intent to use" trademark application for the Mark allegedly in connection with various beauty products, which application was issued serial number 86462124 by the USPTO (the "Defendant's Cosmetic Products Application").

35. The Goods listed in Defendant's Cosmetic Products Application were "Cosmetic and beauty care preparations for skin, body and hair care."

36. In the Defendant's Cosmetic Products Application, it was certified on behalf of Defendant Marley Green, that it had a bona fide intent to use the Mark in connection with the goods listed in the application (collectively, Defendant's Tobacco Products Application, Defendant's Chocolate Products Application and Defendant's Cosmetic Products Application shall be referred to herein as the "Application").

37. In each of the three Applications, the certification made on behalf of Defendant Marley Green stated that "The applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services."

38. Upon information and belief, the certification made on behalf of Defendant Marley Green in each of the Applications was a material false statement that was knowingly made.

39. Upon information and belief, at the time that all three Applications were filed, Defendant Marley Green had no actual bona fide intention of using the Mark in connection with any of the products listed in any of the Applications and the Applications were filed in bad faith, with the specific intent to mislead the USPTO into granting registration for the Mark.

40. Upon information and belief, at the time that all three Applications were filed, Defendant Marley Green had no business operations and did not plan to have any business operations.

41. In each of the three Applications, Defendant Marley Green listed its offices as care of its accountants at 360 Madison Avenue, New York, NY.

42. Upon information and belief, at the time that all three Applications were filed, Defendant Marley Green had no offices and no employees.

43. Upon information and belief, Defendant Marley Green, at the time that all three Defendant Applications were filed, had no intention of using the Marley Natural Mark in connection with any of the products listed in any of the Applications.

### DEFENDANTS' NOTICES OF ALLOWANCES AND REQUESTS FOR EXTENSION OF TIME

44. On September 15, 2015, the USPTO issued a "Notice of Allowance" to Defendant Marley Green for the Tobacco Products Application (the "Tobacco Products Notice of Allowance"). Pursuant to the Tobacco Products Notice of Allowance, Defendant Marley Green had a period of six months to either use the Mark in connection with the goods and timely file a Statement of Use or apply for an extension of an additional six months to use the Mark in connection with the stated goods.

45. On September 15, 2015, the USPTO also issued a "Notice of Allowance" to Defendant Marley Green for the Chocolate Products Application (the "Chocolate Products Notice of Allowance"). Pursuant to the Chocolate Products Notice of Allowance, Defendant Marley Green had a period of six months to either use the Mark in connection with the goods and timely file a Statement of Use or apply for an extension of an additional six months to use the Mark in connection with the goods.

46. On September 15, 2015, the USPTO also issued a "Notice of Allowance" to Defendant Marley Green for the Cosmetic Products Application (the "Cosmetic Products Notice of Allowance"). Pursuant to the Cosmetic Products Notice of Allowance, Defendant Marley Green had a period of six months to either use the Mark in connection with the goods and timely file a Statement of Use or apply for an extension of an

additional six months to use the Mark in connection with the goods (collectively, the Tobacco Products Notice of Allowance, the Chocolate Products Notice of Allowance and the Cosmetic Products Notice of Allowance shall be referred to herein as the "Notices of Allowance").

47. On or about March 15, 2016, Defendant Marley Green filed a Request for Extension of Time to File Statement of Use with the USPTO in connection with the Tobacco Products Application.

48. In the Request for Extension of Time for the Tobacco Products Application, it was certified on behalf of Defendant Marley Green that it "has a continued bona fide intention" to use the Mark in connection with the Tobacco Products.

49. This certification was made by counsel for Defendant Marley Green and not by an officer or employee of Defendant Marley Green.

50. The certification contained in the March 15, 2016 Request for Extension of Time to File Statement of Use does not state counsel's basis of knowledge of the Defendant's alleged intent.

51. Upon information and belief, the statement made in the Extension of Time for the Tobacco Products representing that Defendant Marley Green "has a continued bona fide intention" to use the Mark in connection with the Tobacco Products was false and a material misrepresentation of fact knowingly made to induce the USPTO to granting an extension of time to file a Statement of Use.

52. On or about March 15, 2016, Defendant Marley Green filed a Request for Extension of Time to File Statement of Use with the USPTO in connection with the Chocolate Products Application.

53. In the Request for Extension of Time, it was certified on behalf of Defendant Marley Green that it "has a continued bona fide intention" to use the Mark in connection with the Chocolate Products.

54. This certification was made by counsel for Defendant Marley Green and not by an officer or employee of Defendant Marley Green.

55. The certification contained in March 15, 2016 Request for Extension of Time to File Statement of Use for the Chocolate Products does not state counsel's basis of knowledge of the Defendant's alleged intent.

56. Upon information and belief, the statement made in the Extension of Time for the Chocolate Products representing that Defendant "has a continued bona fide intention" to use the Mark in connection with the Chocolate Products was a material misrepresentation of fact knowingly made to induce the USPTO to granting an extension of time to file a Statement of Use.

57. On or about March 15, 2016, Defendant Marley Green filed a Request for Extension of Time to File Statement of Use with the USPTO in connection with the Cosmetic Products Application.

58. In the Request for Extension of Time, it was certified on behalf of Defendant that it "has a continued bona fide intention" to use the Mark in connection with the Cosmetic Products.

59. This certification was made by counsel for Defendant Marley Green and not by an officer or employee of Defendant Marley Green.

60. The certification contained in March 15, 2016 Request for Extension of Time to File Statement of Use for the Chocolate Products does not state counsel's basis of knowledge of the Defendant's alleged intent.

61. Upon information and belief, the statement made in the Extension of Time for the Cosmetic Products representing that Defendant Marley Green "has a continued bona fide intention" to use the Mark in connection with the Cosmetic Products was a material misrepresentation of fact, knowingly made to induce the USPTO to granting an extension of time to file a Statement of Use.

62. Upon information and belief, on March 15, 2016 when each Request for Extension of Time was filed, Defendant had no actual bona fide intention of using the Mark in connection with any of the products listed in any of the Applications.

63. Upon information and belief, the Requests for Extension of Time were made in bad faith and with the specific intent to defraud the USPTO.

64. Upon information and belief, Defendant Marley Green is not currently in the business of manufacturing or selling any of the products listed in any of its three trademark applications.

65. Upon information and belief, on March 15, 2016, Defendant Marley Green had no offices, no employees, no business operations whatsoever and no plans to commence any kind of business operations.

66. As a result of the uncertainty created by the Notices of Allowances granted to Defendant Marley Green, the Plaintiff has been unable to finalize and/or initiate pending licensing agreements, sales proposals, and its existing business expansion plan.

67. Defendant Marley Green was formed after the Plaintiff first commenced use of the Natural Marley Spirit Mark.

68. Upon information and belief, Defendant Marley Green was formed for the sole purpose of filing the Defendant Applications in an attempt to obtain trademark registrations to be utilized by other parties.

69. The USPTO, as a matter of policy, refuses all applications for registration for trademarks being used in connection with cannabis products, on that basis that interstate sales of such products are not legal under the Federal Controlled Substance Act ("CSA").

70. At the time that the three Defendant Applications were filed, Defendant Marley Green knew or should have known that the USPTO refuses all applications for any trademark being registered in connection with cannabis products.

71. Upon information and belief, at the time that the three Defendant Applications were filed, Defendant Marley Green, or one of its affiliated and alter ego companies, intended to use the Defendant's Mark in connection with cannabis products.

72. Upon information and belief, at the time that the three Defendant Applications were filed, Defendant Marley Green intended to hide from the USPTO the fact that Defendant Marley Green, or one of its affiliated, alter ego companies, intended to use the Defendant Mark in connection with cannabis and cannabis related products and not the products listed in the Defendant Applications.

73. Upon information and belief, at the time that the three Defendant Applications were filed, Defendant Marley Green was planning to utilize the Marley Natural mark in connection with the manufacture and sales of cannabis products.

74. Upon information and belief, at the time that the three Defendant Applications were filed, Defendant Marley Green knew that its Applications would be denied if it had properly and honestly disclosed to the USPTO its actual intention to use the Defendant Mark with cannabis products.

75. Upon information and belief, Defendants intentionally deceived the USPTO as to the actual goods to which the Defendant Mark would be applied.

76. Upon information and belief, on March 15, 2016 when the Request for Extension of Time to File Statement of Use were filed, Defendant Marley Green, or one of its affiliated and/or alter ego companies, was already engaged in the business of manufacturing and selling cannabis products utilizing the Marley Natural mark.

77. Upon information and belief, at the time that the three Defendant Applications were filed, Defendants were aware of Plaintiff Natural Marley Spirit Mark and its related products."

78. Defendants are currently engaged in the sale of cannabis and cannabis related products under the Marley Natural Mark.

79. Defendant Little Bay maintains websites at "marleynaturaltheherb.com', at "marleynaturalshop.com" and at "marleynatural.com"

80. The owner of the marleynaturaltheherb.com domain name is Defendant Privateer Holdings and not Defendant Little Bay.

81. The marleynaturaltheherb.com domain name was first purchased by Defendant Privateer Holdings on February 2, 2016.

82. The owner of the marleynaturalshop.com domain name is Defendant Privateer Holdings and not Defendant Little Bay.

83. The domain registration for the marleynaturalshop.com domain name shows the address of Defendant Privateer Holdings to be 149 Bowery, New York, NY which is the same address as Defendant Little Bay.

84. The owner of the marleynatural.com domain name is an employee of Defendant Privateer Holdings and not Defendant Little Bay.

85. Upon information and belief, all four Defendants are a common enterprise.

86. On November 18, 2014, The Wall Street Journal published an article entitled "Privateer Stirs It Up With Bob Marley's Family to Form Marijuana Brand." The article states that "The business plans to offer its products by late 2015 in jurisdictions where they are legally permitted.'

87. The November 18, 2014 Wall Street Journal article was just one of numerous articles published as a result of a professionally managed public relations campaign launched by Defendants to acquire publicity for their Marley Natural cannabis and cannabis related products.

88. The November 21, 2014 article was published three days prior to Defendants' filing of the Defendant's Applications which alleged that the Marley Natural mark was intended to be used with a long list of products other than cannabis products.

89. On February 5, 2016, a press release was issued and widely circulated by Defendant Privateer Holdings entitled "Marley Natural™ Debuts Premium Cannabis Products" (the "February 5 Press Release").

90. The February 5 Press Release openly admits that the Marley Natural Mark is being used by Defendants with cannabis and cannabis related products.

91. After the February 5 Press Release was published, numerous articles were published about the Marley Natural cannabis products. Including, an article published on February 8, 2016 on the BuzzFeedNews website entitled "Marley Natural Wants To Be Weed's First Luxury Brand." The article states that Marley Natural's parent company is Defendant Privateer Holdings.

92. Upon information and belief, Defendants Marley Green, Little Bay, the Marley Natural Company, and Privateer Holdings, are all under common ownership and management and each is an alter ego of each other.

93. Upon information and belief, Defendants' developed an intention to use the Marley Natural Mark prior to the release of the February 5 Press Release.

94. Upon information and belief, the February 5 Press Release was just one part of an active public relations campaign initially launched on November 18, 2014 by Defendants designed to create attention for their cannabis and cannabis related products.

95. On March 15, 2016, when Defendant Marley Green caused the Requests for Extension of Time to be filed, Defendants had already publicly announced that they were already using their Marley Natural Mark in connection with cannabis and related products.

96. On March 15, 2016 when Defendant Marley Green caused the Requests for Extension of Time to be filed, Defendants had already received substantial publicity regarding their manufacture and sale of a line of cannabis products under the Marley Natural trademark.

97. On March 15, 2016 when Defendant Marley Green caused the Requests for Extension of Time to be filed, Defendants had already commenced actual use of the

Marley Natural mark in connection with the manufacture and sale of a line of cannabis and cannabis related products.

98. Upon information and belief, on March 15, 2016 when Defendant Marley Green caused the Requests for Extension of Time to be filed, Defendants knew that they had no intention to use the Marley Natural Mark with the products listed in the Defendant Applications.

99. Upon information and belief, the March 15, 2016 Requests for Extension of Time were made in an attempt to deceive the USPTO as to Defendants' actual use of the Defendant Mark.

100. Plaintiff's use of the "Natural Marley Spirit" mark predates the use of the alleged "Marley Natural" mark by Defendants, and thus, Plaintiff has superior rights in the "Natural Marley Spirit" mark.

101. Upon information and belief, the Defendants' Applications were filed in bad faith as part of a scheme to damage the Plaintiff's ability to rightfully utilize its trademark.

102. In fact, Defendants' scheme has succeeded since as a result of the uncertainty created by the Notices of Allowances granted to Defendant Marley Green, the Plaintiff has been unable to finalize pending licensing agreements, sales proposals, and its existing business expansion plan.

103. Plaintiff's Natural Marley Spirit Mark was developed through the expenditure of significant amounts of time, effort and money on the part of Plaintiff, and further significant amounts of money have been expended by Plaintiff in the registering, marketing, and advertising of the Natural Marley Spirit Mark.

## FIRST CAUSE OF ACTION
(Unfair Competition Under the Lanham Act)

104. Defendants' use of the "Marley Natural" mark in connection with goods similar to Plaintiff's goods is likely to cause confusion as to source of Plaintiff's goods.

105. Defendants' filing of Defendants' trademark applications were done in bad faith and constitutes fraud upon the United States Patent and Trademark Office.

106. Defendants' filing of Defendants' trademark applications in bad faith was done with the specific intent of "locking" Plaintiff out of the market for cannabis products.

107. Defendants' use of the "Marley Natural" mark in connection with goods similar to Plaintiff's constitutes unfair competition by Defendants against Plaintiff.

108. Defendants' filing of Defendants' trademark applications in bad faith constitutes unfair competition by Defendants against Plaintiff.

109. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

110. In addition, by reason of the foregoing, Plaintiff is also entitled to an order cancelling Defendant Marley Green's Notice of Allowance.

## SECOND CAUSE OF ACTION
(Trademark Infringement Under New York GBL §360-k)

111. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 110 as if fully stated herein.

112. Plaintiff's use of its Natural Marley Spirit Mark predates Defendants' use of the "Marley Natural" mark and predates the filing of Defendant Marley Green's intent to use trademark applications.

113. Defendants' use of the "Marley Natural" mark in connection with cannabis and other products has caused, or is likely to cause, confusion in the mind of the public as to the source or origin of Defendants' goods.

114. Defendants' use of the "Marley Natural" mark in connection with cannabis and other products has caused, or is likely to cause, confusion in the mind of the public that the Defendants are somehow associated, affiliated, connected, approved, authorized or sponsored by Plaintiff.

115. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
(Injury to Business Reputation; Dilution and
Unfair Competition Under New York GBL §360-I)

116. Plaintiff repeats and realleges the allegations contained in paragraphs I through 115 as if fully stated herein.

117. Defendants' use of the "Marley Natural" mark in connection with cannabis and other products has caused or is likely to cause, confusion in the mind of the public as to the source of Defendants' goods.

118. Defendants were aware of Plaintiff's prior use of its substantially similar Natural Marley Spirit Mark in connection with similar goods being sold by Defendants.

119. Defendants' filing of the Defendant Applications for trademark registration were each filed in bad faith, and with the intent to damage the Plaintiff and to dilute the Plaintiff's trademark.

120. Defendants' filing of each of the Requests for Extension of Time were each filed in bad faith and with the intent to damage the Plaintiff and to dilute the Plaintiff's trademark.

121. Defendants' actions are in violation of New York General Business Law §360-I.

122. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
(Permanent Injunction)

123. Plaintiff repeats and realleges the allegations contained in paragraphs I through 122 as if fully stated herein.

124. Plaintiff is irreparably damaged by Defendants' use of the "Marley Natural" mark in connection with cannabis and other products.

125. Plaintiff has no adequate remedy at law.

126. By reason of the foregoing, Plaintiff is entitled to an order enjoining and restraining Defendants from using the "Marley Natural" mark in connection with cannabis and other cannabis related products.

WHEREFORE, Plaintiff demands relief as follows:

(i) on the First Cause of Action, rendering judgment against Defendants in an amount to be determined at trial, and ordering the cancellation of Defendants' Notices of Allowance.

(ii) on the Second Cause of Action, rendering judgment against Defendants in an amount to be determined at trial.

(iii) on the Third Cause of Action, rendering judgment against Defendants in an amount to be determined at trial.

(iv) on the Fourth Cause of Action, rendering judgment enjoining and restraining Defendants from using the "Marley Natural" mark in connection with cannabis and other cannabis related products.

(v) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 23, 2016

CYRULI SHANKS HART & ZIZMOR, LLP

By: _____
Paul Goodman (PG-4049)

Attorneys for Plaintiff
420 Lexington Avenue, Suite 2320
New York, New York 10170
(212) 661-6800